**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ricky Lee Campbell,<br>Plaintiff,<br>v.<br>Unknown Parties, et al.,<br>Defendants. | No. CV-24-01797-PHX-JAT (JZB)<br>**ORDER** |

Ricky Lee Campbell, an inmate in the Arizona State Prison Complex (ASPC)-Tucson Complex, Rincon Unit, brought this civil rights action against Arizona Department of Corrections, Rehabilitation, and Reentry (ADCRR) officials. (Doc. 1 at 1-2). Before the Court is Defendant Ramses Vargas's Motion for Summary Judgment, which Plaintiff opposes. (Docs. 53, 58). Because Plaintiff has not exhausted the administrative remedies available through the ADCRR, the Court will grant the Motion.

## I. PROCEDURAL BACKGROUND

The Court screened Plaintiff's Complaint and determined that Plaintiff filed two Eighth Amendment claims against the ADCRR officials. (Doc. 9). He had sued Unknown Officer #1 under a threat-to-safety theory and Unknown Nurses #1-2 under an inadequate medical care theory. (*Id*. at 5). The Court later substituted Mr. Vargas as Nurse #1 and an unknown person called "Andersen" as Nurse #2, (Doc. 27 at 3), who was later dismissed for failure to effect timely service, (Docs. 51, 52). Unknown Officer #1 was dismissed for the same reason. (Docs. 33, 38). Mr. Vargas is therefore the only remaining defendant.

Plaintiff's claims arose from a fall he sustained in an ADCRR facility. (Doc. 1 at 3-5). He alleges that Mr. Vargas inadequately examined his resultant hip injury, which was only later revealed to be severe. (*Id.*). Mr. Vargas moved for summary judgment, asserting that Plaintiff had failed to exhaust all his administrative remedies as required by the Prison Litigation Reform Act of 1996 (PLRA). (Doc. 53).

## II. SUMMARY JUDGMENT STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Mr. Vargas bears the initial responsibility of presenting the basis for his Motion and the evidence that he believes demonstrates the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323.

Should Mr. Vargas satisfy this initial requirement, the burden shifts to Plaintiff to show that there is a factual dispute concerning something that might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 250 (1986); Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Although this material issue of fact need not be conclusive, it must demonstrate that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see* Fed. R. Civ. P. 56(c)(1).

This means that the Court will not weigh the evidence to determine the truth of Plaintiff's allegations, but will merely determine whether there exists a factual issue that is suitable for trial. *See Anderson*, 477 U.S. at 249. In doing so, the Court believes Plaintiff's evidence and draws any inferences in his favor. *Id.* at 255; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The Court also views Plaintiff's contentions based on his personal knowledge as evidence in opposition to the Motion. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## III. FACTUAL BACKGROUND

Plaintiff was moved to ADCRR's Eyman Complex, Special Management Unit #1,

on February 7, 2023. (Doc. 1 at 3). Upon arrival, he was assigned a top bunk despite his protestations and a Special Needs Order indicating that he needed to be assigned a bottom bunk. (*Id.*). While climbing down from his top bunk, Plaintiff fell and injured his hip. (*Id.*). Plaintiff's cellmate called for a response team, which included Mr. Vargas. (*Id.*). After briefly examining the injury, Mr. Vargas told the prison officers that Plaintiff was "fine" and should be returned to his cell. (*Id.*). That assessment turned out to be incorrect.

Plaintiff remained his cell for three painful days. He was unable to eat, move, or get out of his bed. (*Id.* at 4). A nurse practitioner eventually visited Plaintiff and transferred him to the medical unit on February 10, 2023. (*Id.*). Imaging taken at that time showed that Plaintiff's hip had broken; Plaintiff underwent surgery and a long rehabilitation process to address the injury and its effects. (*Id.*).

Since March 2022, and during the relevant period in this case, ADCRR maintained an internal inmate grievance procedure that is used to address complaints about medical treatment. (Doc. 53-1 at 7-22); ARDCC Department Order ("DO") 802 §§ 10-12, *Inmate Grievance Procedure* (eff. Mar. 2, 2022). Each step is entered into the Arizona Correctional Information System ("ACIS") with a corresponding case number.

An inmate begins the procedure by submitting an Informal Complaint within ten workdays of the underlying incident. If the inmate is dissatisfied with the answer to the initial complaint,[1] he then has five workdays to submit a Formal Grievance, answered by the Contract Director of Nursing. Finally, the inmate may then appeal an adverse decision to the Contract Facility Health Administrator, whose decision is final and signifies the exhaustion of departmental remedies.

Plaintiff submitted four documents concerning the ARDCC's grievance procedure. Two are Inmate Informal Complaint Resolution forms from January 2024 that detail the injury discussed above and request a settlement of $25 million from the prison to redress the actions of the varied defendants. (Doc. 49 at 9, 12). The other two are Inmate Grievance Appeal forms, one from February 2024 and another from March 2024. (*Id.* at 8, 10-11).

[1] Informal Complaints are uploaded into the Arizona Correctional Information System ("ACIS") and answered by the Contract Assistant Director of Nursing.

Both explain that Plaintiff's complaints were dropped because they were untimely under DO 802. The earlier of these appeal forms explains that Plaintiff is disabled and mentally ill and received no assistance with submitting a complaint from either ADCRR or hospital staff. (*Id*. at 10-11).

The ACIS, meanwhile, has no record of Plaintiff's use of ADCRR's internal inmate grievance procedure. Jennifer Wanders, the Regional Grievance Coordinator,[2] explained that she searched the ACIS database for medical grievance records in January 2026 using both Plaintiff's name and inmate number. (Doc. 53-1 at 2-3). But she unearthed no relevant records, even any rejecting allegations or returning them as unprocessed. (*Id*. at 3). This lack of documentation notwithstanding, Plaintiff indicated in his Complaint that he already completed the highest level of appeal with the ADCRR procedure. (Doc. 1 at 5).

Plaintiff presented other documentation to the Court, but they are not worthy of much discussion. Among this purported evidence is a March 2001 letter from the Vatican (expressing Pope John Paul II's prayers for Plaintiff), a May 2018 letter from the Arizona Governor's Office, a June 2018 letter from former Senator John McCain, a July 2022 letter from Governor Tim Walz (each explaining that they could not intervene into the decision-making process of the judiciary), and a June 2002 article concerning drug trials on prison inmates. (Doc. 58 at 10-14). This documentation was originally printed before Plaintiff's hip injury or treatment took place and thus has no bearing on this case.

## IV. UNDISPUTED NONEXHAUSTION

Under the PLRA, an inmate may not bring an action concerning prison conditions under any federal law until he exhausts the available administrative remedies. 42 U.S.C § 1997e(a). Such exhaustion necessarily includes taking account of the prison's deadlines and procedure. *See Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). And, to be considered "available," an administrative remedy must be "capable of use." *Ross v. Blake*, 578 U.S. 632, 642 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

"If undisputed evidence viewed in the light most favorable to the prisoner shows a

[2] The Regional Grievance Coordinator is responsible for overseeing all ADCRR medical grievances for NaphCare, the prison's contracted healthcare provider. (Doc. 53-1 at 1-2).

failure to exhaust, a defendant is entitled to summary judgment." *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), *abrogated on other grounds by Perttu v. Richards*, 605 U.S. 460, 475 (2025). Mr. Vargas must first demonstrate that Plaintiff had an available remedy and that he did not exhaust that remedy. *Id*. at 1172. The burden would then shift to Plaintiff to show "something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*.

The Court finds that Mr. Vargas has sufficiently identified an untapped source of administrative relief for Plaintiff's injury. The grievance procedure, which covers medical complaints, was in use at the time of the hip injury and could have offered Plaintiff relief. *See, e.g.*, *Ross*, 578 U.S. at 642; *Derello v. Stickley*, 631 F. Supp. 3d 758, 770-74 (D. Ariz. 2026); *Hunter v. Ryan*, No. CV-21-01228-PHX-SRB (ESW), 2024 WL 7110049, at *6, 7-9 (D. Ariz. Aug. 8, 2024), *aff'd sub nom. Hunter v. Galvin*, 2026 WL 1952717 (9th Cir. 2026); (Doc. 1 at 5 (reflecting that Plaintiff understood that the ADCRR grievance process was available to him)).

Even placed under a sympathetic light, the evidence conclusively demonstrates that Plaintiff failed to properly complete the ADCRR grievance procedure. *See Woodford*, 548 U.S. at 93-94; *Hunter*, 2024 WL 71100 at *7 (holding that a plaintiff had not exhausted his administrative remedies when he failed to comply with a DO 802 deadline). Plaintiff claims that Mr. Vargas inattentively examined his hip injury on February 7, 2023, and incorrectly decided that Plaintiff was fine. (Doc. 1 at 3). Because the alleged grievance was limited to this date, the procedure required that Plaintiff submit an Informal Complaint well before the end of February 2023.

But Ms. Wanders's search of the ACIS database revealed that no complaints bearing Plaintiff's name or number had been received or even returned by the relevant authorities. (Doc. 53-1 at 2-3). Because each submitted grievance is recorded in ACIS, (*id.* at 2), the lack of documentation with regard to Plaintiff shows that he filed no grievances or appeals. *Cf. United States v. De Georgia*, 420 F.2d 889, 893 (9th Cir. 1969); Fed. R. Evid. 803(7) (providing that the absence of a record of a regularly conducted activity may be evidence

that "the matter did not occur or exist").

To be sure, Plaintiff submitted documents related to the ADCRR procedure. (Doc. 49 at 9-12). But those documents cannot prove that Plaintiff filed an Informal Grievance on time, much less that he successfully appealed a Formal Grievance and thereby exhausted the process. At most, their 2024 submission dates and reports of untimeliness adduce that Plaintiff did not submit an Informal Complaint by the ADCRR's deadline. And although one of Plaintiff's forms argues that his extenuating circumstances should negate the missed deadline, (*Id*. at 10-11), it is for the prison—not this Court—to apply DO 802's deadlines and any discretionary exceptions thereto. *See Jones v. Bock*, 549 U.S. 199, 218 (2007).

With no confirmation that Plaintiff exhausted the grievance process from ACIS or the record, the only thing left to consider is Plaintiff's own affirmation that he did. (Doc. 1 at 5). However, "simply checking the boxes on the complaint form that he appealed his administrative remedies to the highest level, without any explanation of what he did to exhaust his administrative remedies, is not sufficient" to overcome Mr. Vargas's Motion. *See Merchant v. Smith*, No. CV-21-01593-PHX-JAT (ESW), 2023 WL 4959485, at *4 (D. Ariz. Aug. 3, 2023). No matter how the Court approaches the evidence, it is clear that the ADCRR's administrative remedies had not been properly exhausted by Plaintiff.[3]

The burden therefore shifts to Plaintiff, who must show that the grievance process was "effectively unavailable" to him. *Albino*, 747 F.3d at 1166. Such de facto unavailability exists when (1) the process depends on officers unable or unwilling to provide relief; (2) the process is "so opaque" that it becomes "incapable of use;" or (3) prison administrators thwart its completion through "machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44. Here, the record shows no evidence that could show that any of these three possibilities occurred.

Because no evidence exists that would show that Plaintiff attempted to exhaust the process in the first place, there cannot be a convincing argument that the process was a

[3] The Court has examined Plaintiff's response to Mr. Vargas's motion but found it lacking in any argumentation related to the exhaustion of administrative remedies. *See generally* (Doc. 58). As such, it has not demonstrated that there is a material fact in dispute.

"dead end" due to unable or unwilling officials. That reasoning likewise dooms Plaintiff's chances of proving that the process proved too opaque to use. Finally, the record has not shown that Plaintiff—or any reasonable inmate—was or would have been deterred from timely submitting a grievance. *See McBride v. Lopez*, 807 F.3d 982, 987-88 (9th Cir. 2015).

## V. CONCLUSION

When enacting the PLRA, Congress intended "to curb the large number of prisoner lawsuits filed in federal court." *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015). Requiring inmates to exhaust administrative remedies before filing in federal court "allows prison officials an opportunity to resolve disputes" about their responsibilities and thereby reduce the quantity and improve the quality of federal suits. *Jones*, 549 U.S. at 204. Pieced together, the evidence in this case establishes that Plaintiff decided not to travel ADCRR's road to administrative remedies when it was open to hearing his grievance. For that reason, and those articulated above, the PLRA prohibits Plaintiff's claim against Mr. Vargas. *See Albino*, 747 F.3d at 1166.

Accordingly,

**IT IS ORDERED** that the reference to the Magistrate Judge is withdrawn as to Defendant Vargas's Motion for Summary Judgment (Doc. 53).

**IT IS FURTHER ORDERED** that Defendant Vargas's Motion for Summary Judgment (Doc. 53) is granted. Defendant Vargas is dismissed without prejudice.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall enter judgment accordingly and, because such judgment encompasses and resolves all claims against all Defendants, close the case.

Dated this 20th day of October, 2026.

James A. Teilborg
Senior United States District Judge